Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/31/2020 08:11 AM CDT

State of Nebraska, appellee, v.
Benjamin L. Ferrin, appellant.
___ N.W.2d ___

Filed May 8, 2020.    No. S-19-594.

1. **Criminal Law: Courts: Judgments: Appeal and Error.** In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

2. **Statutes.** Statutory interpretation presents a question of law.

3. **Evidence: Records: Appeal and Error.** A bill of exceptions is the only vehicle for bringing evidence before an appellate court, and evidence which is not made a part of the bill of exceptions may not be considered.

4. **Records: Appeal and Error.** As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.

5. **Trial: Pretrial Procedure: Pleadings: Evidence: Juries: Appeal and Error.** A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.

6. **Pretrial Procedure: Pleadings: Appeal and Error.** An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial.

7. **Motions to Dismiss: Directed Verdict: Waiver: Appeal and Error.** A defendant who moves for dismissal or a directed verdict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the sufficiency of the evidence.

8. **Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

9. **Criminal Law: Statutes.** To determine the elements of a crime, courts look to the text of the statute.

10. ____: ____. Penal statutes are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.

11. ____: ____. Effect must be given, if possible, to all parts of a penal statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.

12. **Statutes.** In the absence of anything indicating otherwise, statutory language is to be given its plain and ordinary meaning.

13. **Criminal Law: Police Officers and Sheriffs: Judges: Proof: Intent.** To show a violation of Neb. Rev. Stat. § 28-906(1) (Reissue 2016), the State must prove that (1) the defendant intentionally obstructed, impaired, or hindered either a peace officer, a judge, or a police animal assisting a peace officer; (2) at the time the defendant did so, the peace officer or judge was acting under color of his or her official authority to enforce the penal law or preserve the peace; and (3) the defendant did so by using or threatening to use either violence, force, physical interference, or obstacle.

14. **Criminal Law: Police Officers and Sheriffs: Intent.** Neb. Rev. Stat. § 28-906(1) (Reissue 2016) does not proscribe all conduct that intentionally obstructs, impairs, or hinders officers who are acting under color of their authority to either enforce the penal law or preserve the peace. Instead, it proscribes only conduct that involves using or threatening to use "violence, force, physical interference, or obstacle."

15. **Police Officers and Sheriffs: Convictions: Evidence.** Evidence showing a defendant resisted handcuffing, struggled with an officer, and continued to resist restraint is alone sufficient to sustain a conviction for obstructing a peace officer under Neb. Rev. Stat. § 28-906(1) (Reissue 2016).

16. **Criminal Law: Police Officers and Sheriffs.** The act of running away from police interposes a physical obstacle that can obstruct, impair, or hinder an officer's efforts to preserve the peace under Neb. Rev. Stat. § 28-906(1) (Reissue 2016).

17. **Criminal Law: Police Officers and Sheriffs: Judges: Intent.** The proper inquiry under Neb. Rev. Stat. § 28-906(1) (Reissue 2016) is not whether a defendant has engaged in "some sort of physical act," but, rather, whether a defendant's conduct, however expressed, used or threatened to use either violence, force, physical interference, or obstacle to intentionally obstruct, impair, or hinder a peace officer or judge who was acting to either enforce the penal law or preserve the peace under color of his or her official authority.

18. **Police Officers and Sheriffs: Investigative Stops: Motor Vehicles.** Officers making a traffic stop may order the driver and passengers to get out of the vehicle pending completion of the stop.

19. **Police Officers and Sheriffs: Investigative Stops: Motor Vehicles: Evidence.** Evidence that a defendant repeatedly refused to comply with police orders to exit a vehicle during a traffic stop is sufficient to show the use of either "physical interference" or "obstacle" under Neb. Rev. Stat. § 28-906(1) (Reissue 2016).

Appeal from the District Court for Sarpy County, GEORGE A. THOMPSON, Judge, on appeal thereto from the County Court for Sarpy County, ROBERT C. WESTER, Judge. Judgment of District Court affirmed.

John H. Sohl for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

The district court for Sarpy County affirmed Benjamin L. Ferrin's conviction and sentence for the misdemeanor offense

of obstructing a peace officer under Neb. Rev. Stat. § 28-906
(Reissue 2016), which provides in relevant part:

> A person commits the offense of obstructing a peace
> officer, when, by using or threatening to use violence,
> force, physical interference, or obstacle, he or she inten-
> tionally obstructs, impairs, or hinders (a) the enforce-
> ment of the penal law or the preservation of the peace
> by a peace officer or judge acting under color of his or
> her official authority or (b) a police animal assisting a
> peace officer acting pursuant to the peace officer's offi-
> cial authority.

The primary question on appeal is whether the evidence in
this case was sufficient to support Ferrin's conviction. Finding
it was, we affirm.

## I. BACKGROUND

On February 11, 2018, at 1:54 p.m., two Bellevue, Nebraska,
police officers were dispatched to a domestic disturbance call.
When they arrived, they spoke with M.H., who had called
police for assistance. M.H. told police she and her husband,
Ferrin, were having marital difficulties, and she reported
he had locked her out of their residence. M.H. spoke with
police outside the residence, and the conversation was video
recorded.

M.H. told police she had spoken with Ferrin by telephone
earlier that day and was concerned about his state of mind,
explaining "he just appeared to have snapped." M.H. reported
that Ferrin had been verbally and physically abusive in the
past, and she told the officers Ferrin had sexually assaulted her
about 3 weeks earlier. M.H. told the officers that Ferrin owned
several guns and that he had been suicidal months before. She
warned officers that Ferrin may be uncooperative if they tried
to talk with him.

### 1. TRAFFIC STOP

While police were interviewing M.H. outside her residence,
Ferrin drove past in his pickup truck. One of the officers got

into his cruiser and followed Ferrin's truck, activating his overhead lights. The officer testified that the purpose of the traffic stop was twofold: to investigate a possible crime against M.H. and to check on Ferrin's well-being.

Ferrin pulled his truck to the side of the road and stopped. The first officer parked his cruiser behind Ferrin's truck and waited for the second officer to arrive and provide backup. According to the first officer, he did not want to contact Ferrin without backup, because he was concerned about Ferrin's state of mind and the possibility there were guns in his truck.

The second officer arrived at the traffic stop shortly thereafter, and the officers positioned themselves near the first officer's cruiser and directed Ferrin to exit his pickup truck and walk back to them. Ferrin, whose window was rolled down, replied that he could not hear the officers. Using the public address system in one of the cruisers, the officers again asked Ferrin to open his pickup door, exit the pickup, and walk back to where the officers were positioned. Ferrin responded, "'No, thank you.'"

At that point, the officers considered it a "high-risk" traffic stop and drew their firearms. They again asked Ferrin to step out of his truck and walk back to them. Ferrin responded that he did not want to leave his truck, because he had a dog inside. The officers suggested Ferrin roll up the window so that the dog could not get out, and they again directed him to exit the truck and walk back to them. Again Ferrin refused to comply. The officers informed Ferrin that if he did not comply with their request to get out of his truck, he could be charged with a crime. Ferrin asked why he had been stopped, and the officers told him they were "investigating a domestic incident." Ferrin replied that the officers had no reason to stop him, and he remained inside the truck. The officers again instructed Ferrin to get out of the truck and walk back to them so that they could talk with him. Ferrin remained in the truck. The video shows that the officers made approximately eight requests for Ferrin to step out of the truck and that he complied with none.

After approximately 3 to 5 minutes of this back-and-forth communication, the officers advised Ferrin he was under arrest for obstructing a peace officer. Ferrin responded, "'Fuck off.'" He remained in his truck for a few more seconds, then opened the door and got out. When the officers instructed Ferrin where to put his hands, he again responded, "'Fuck off.'" The officers then instructed Ferrin to lift his shirt so that they could see his waistband and to walk toward them until he was told to stop. Ferrin complied with these requests. The officers then directed Ferrin to get down on his knees. Ferrin initially refused that request, but complied after further direction. At that point, Ferrin was handcuffed, searched, and placed in the cruiser. The entire stop and arrest was video recorded.

### 2. Criminal Proceedings

On March 7, 2018, the State filed a criminal complaint in Sarpy County Court charging Ferrin with obstructing a peace officer, in violation of § 28-906. Ferrin entered a plea of not guilty.

### (a) Motion to Suppress

Ferrin filed a motion to suppress, contending the traffic stop and subsequent arrest were not supported by probable cause. A suppression hearing was held, but that hearing was not included in the record on appeal. In a written order, the county court overruled the suppression motion in all respects. The matter was set for a jury trial.

### (b) Motion in Limine

Before trial, Ferrin filed a motion in limine seeking to preclude the State from referring to, or offering evidence of, M.H.'s statements to police before the traffic stop. Ferrin argued that M.H.'s statements had no relevance to the charged offense and would serve only to prejudice the jury. The State responded that M.H.'s statements, which included allegations of criminal conduct by Ferrin, formed the basis for the traffic stop and were inextricably intertwined with evidence of the

obstruction crime with which Ferrin had been charged. The court denied Ferrin's motion in limine, but indicated it would give a limiting instruction to the jury regarding the proper use of M.H.'s statements.

### (c) Jury Trial

At trial, both officers testified to the facts summarized above. A video recording of the traffic stop, including M.H.'s statements to the officers prior to the stop, was offered and received over Ferrin's relevancy and hearsay objections. The court gave the jury a limiting instruction essentially admonishing them to consider M.H.'s statements only for the purpose of determining whether police were conducting a criminal investigation or preserving the peace. Similar admonishments were repeated several times during the trial and were included in the written jury instructions.

At the close of the State's case in chief, Ferrin moved for directed verdict, arguing the State had failed to prove the material elements of the charged offense. Summarized, Ferrin argued the evidence was insufficient as a matter of law to prove a violation of § 28-906(1), because it showed merely that he refused to cooperate with police. The court overruled Ferrin's motion, after which he testified in his own defense.

At the close of all the evidence, Ferrin renewed his motion for a directed verdict without additional argument. The court summarily overruled the motion and submitted the case to the jury. The jury returned a guilty verdict, and the court sentenced Ferrin to 7 days in the county jail, 1 month of probation, and a $50 fine. Ferrin timely appealed his conviction and sentence to the district court, sitting as an appellate court.

### 3. Appeal to District Court

Ferrin assigned four errors before the district court: (1) There was insufficient evidence to convict him, (2) the county court erred by overruling his motion to suppress, (3) the county court erred by admitting evidence that had a prejudicial impact on the jury, and (4) the sentence imposed was excessive.

The district court rejected all four assignments of error and affirmed the trial court's judgment. Ferrin timely appealed, and we moved the case to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

On appeal to this court, Ferrin assigns, restated and reordered, that the district court erred in affirming the judgment of the county court, because the county court erred in (1) overruling his motion to suppress, (2) overruling his motion in limine, and (3) overruling his motions for directed verdict, because there was insufficient evidence to prove the material elements of the crime.

## III. STANDARD OF REVIEW

[1] In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion.[1] Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record.[2] When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[3]

[2] Statutory interpretation presents a question of law.[4]

## IV. ANALYSIS

### 1. Motion to Suppress

Ferrin's first assignment of error challenges the overruling of his motion to suppress, but the bill of exceptions in this case does not contain the suppression hearing.

---

[1] *State v. Becker*, 304 Neb. 693, 936 N.W.2d 505 (2019).

[2] *Id.*

[3] *Id.*

[4] *State v. Brye*, 304 Neb. 498, 935 N.W.2d 438 (2019).

[3,4] A bill of exceptions is the only vehicle for bringing evidence before an appellate court, and evidence which is not made a part of the bill of exceptions may not be considered.[5] As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors.[6] Because our record does not include the suppression hearing, we do not consider Ferrin's assignment of error regarding the ruling on his motion to suppress.

## 2. MOTION IN LIMINE

[5] Ferrin's second assignment of error challenges the overruling of his motion in limine, which sought to preclude admission of M.H.'s video-recorded statements to police. We have repeatedly held that a motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury.[7] It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence.[8] Therefore, when a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence is offered at trial in order to predicate error before an appellate court.[9]

Ferrin's brief notes that he objected at trial when the video recording of M.H.'s statements was offered, but he has not assigned error to the ruling during trial. To be considered by an appellate court, an alleged error must be both specifically

---

[5] *Bohling v. Bohling*, 304 Neb. 968, 937 N.W.2d 855 (2020).

[6] *D.I. v. Gibson*, 295 Neb. 903, 890 N.W.2d 506 (2017).

[7] *Pantano v. American Blue Ribbon Holdings*, 303 Neb. 156, 927 N.W.2d 357 (2019); *Golnick v. Callender*, 290 Neb. 395, 860 N.W.2d 180 (2015); *State v. Schreiner*, 276 Neb. 393, 754 N.W.2d 742 (2008).

[8] *Pantano, supra* note 7.

[9] *Id.*

assigned and specifically argued in the brief of the party assert-ing the error.[10]

[6] An appellant who has assigned only that the trial court erred in denying a motion in limine has not triggered appellate review of the evidentiary ruling at trial.[11] Because Ferrin's second assignment of error challenges only the rul-ing on the motion in limine, it presents nothing for appellate review.

### 3. Motions for Directed Verdict/ Sufficiency of Evidence

Ferrin's third assignment of error challenges the overruling of his motions for directed verdict made at the close of the State's case and renewed at the conclusion of all the evidence. Both motions asserted the evidence was insufficient to prove the material elements of the charged offense.

[7] A defendant who moves for dismissal or a directed ver-dict at the close of the evidence in the State's case in chief in a criminal prosecution and who, when the court overrules the dismissal or directed verdict motion, proceeds with trial and introduces evidence, waives the appellate right to chal-lenge correctness in the trial court's overruling the motion for dismissal or a directed verdict but may still challenge the suf-ficiency of the evidence.[12] We therefore consider Ferrin's third assignment of error as one challenging the sufficiency of the evidence to prove the offense of obstructing a peace officer.

[8] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

---

[10] *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019).

[11] See *Pantano, supra* note 7.

[12] *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

a reasonable doubt.[13] An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[14]

### (a) Obstructing Peace Officer

[9-12] We begin by identifying the material elements the State must prove to show a violation of § 28-906(1). To determine the elements of a crime, we look to the text of the statute.[15] And when analyzing the text of a criminal statute, we follow settled principles of statutory construction. Penal statutes are considered in the context of the object sought to be accomplished, the evils and mischiefs sought to be remedied, and the purpose sought to be served.[16] Effect must be given, if possible, to all parts of a penal statute; no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided.[17] And in the absence of anything indicating otherwise, statutory language is to be given its plain and ordinary meaning.[18]

[13] Under the plain language of the statute, to show a violation of § 28-906(1), the State must prove that (1) the defendant intentionally obstructed, impaired, or hindered either a peace officer, a judge, or a police animal assisting a peace officer; (2) at the time the defendant did so, the peace officer or judge was acting under color of his or her official authority to enforce the penal law or preserve the peace; and (3) the defendant did so by using or threatening to use either violence, force, physical interference, or obstacle.

On appeal, Ferrin does not argue there was insufficient evidence to establish the first two of these elements. Rather,

---

[13] *State v. Olbricht*, 294 Neb. 974, 885 N.W.2d 699 (2016).

[14] *Id.*

[15] *State v. Mann*, 302 Neb. 804, 925 N.W.2d 324 (2019).

[16] *Id*.

[17] *Id*.

[18] *State v. Stanko*, 304 Neb. 675, 936 N.W.2d 353 (2019).

his insufficiency argument is focused on the third element, which addresses the proscribed conduct. We limit our analysis accordingly.

### (i) Proscribed Conduct

[14] Section 28-906(1) does not proscribe all conduct that intentionally obstructs, impairs, or hinders officers who are acting under color of their authority to either enforce the penal law or preserve the peace. Instead, it proscribes only conduct that involves using or threatening to use "violence, force, physical interference, or obstacle." We have rejected the suggestion that these statutory terms are unconstitutionally vague, finding instead that they are commonly used words and are understandable by those of ordinary intelligence.[19]

[15] We have consistently recognized that evidence showing a defendant resisted handcuffing, struggled with an officer, and continued to resist restraint is alone sufficient to sustain a conviction for obstructing a peace officer.[20] But here, the State generally concedes that Ferrin's conduct during the traffic stop did not involve using or threatening to use either violence or force. We agree, and we confine our analysis to whether the record contains sufficient evidence that Ferrin used or threatened to use either "physical interference" or "obstacle" within the meaning of § 28-906(1). Nebraska's appellate courts have considered these terms in several cases.

This court first considered the meaning of the phrase "physical interference, or obstacle" as used in § 28-906(1) in the 1987 case *In re Interest of Richter.*[21] In that case, two uniformed officers responded to a domestic disturbance call requesting police assistance in removing a disruptive youth from a home. When officers arrived, the youth was

---

[19] *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986).

[20] *State v. Campbell*, 260 Neb. 1021, 620 N.W.2d 750 (2001); *Lynch, supra* note 19.

[21] *In re Interest of Richter*, 226 Neb. 874, 415 N.W.2d 476 (1987).

arguing, cursing, and yelling, and officers told him he would be taken to a youth shelter for the evening. While officers were escorting the youth for transport, he ran away. They pursued him on foot and eventually located him an hour later, at which point he tried to run from the officers a second time. Based on these events, the State alleged the youth was within the jurisdiction of the juvenile court because he committed an act which would constitute a violation of § 28-906(1).[22] In response, the youth argued that to prove a violation of § 28-906(1), the State had to show he used or threatened to use "some physical means to thwart the officers"[23] that involved more than simply running away from police. We disagreed.

[16] We gave § 28-906(1) its plain and ordinary meaning, and reasoned that even if the word "physical" modified both "interference" and "obstacle," the act of running away from police interposed a physical obstacle that obstructed, impaired, or hindered the officers' efforts to preserve the peace.[24]

Ten years later, we decided *State v. Yeutter.*[25] In that case, city police discovered Edwin Yeutter's dog running at large in violation of a city ordinance, and an officer went to Yeutter's home to issue a citation. Yeutter refused to provide his identifying information, and the officer could not complete the citation. When Yeutter was told that if he did not cooperate, he would be arrested for obstructing an officer, he held out his arms and said, "'[G]o ahead and take me.'"[26] The officer

---

[22] See, generally, Neb. Rev. Stat. § 43-247(1) (Reissue 2016).

[23] *In re Interest of Richter, supra* note 21, 226 Neb. at 876, 415 N.W.2d at 478.

[24] *In re Interest of Richter, supra* note 21. Accord *U.S. v. Sledge*, 460 F.3d 963 (8th Cir. 2006) (under Nebraska law, mere act of running away from law enforcement officers constitutes physical interference or obstacle within meaning of § 28-906(1)).

[25] *State v. Yeutter*, 252 Neb. 857, 566 N.W.2d 387 (1997).

[26] *Id.* at 859, 566 N.W.2d at 390.

instructed him to put his hands on a nearby car, Yeutter refused, and a physical struggle ensued. During the struggle, Yeutter grabbed the officer's baton, grabbed the officer's handcuffs, bit the officer's finger, and generally resisted being taken into custody and placed in the police cruiser.

Yeutter was convicted for assaulting an officer, resisting arrest, and obstructing a peace officer. The Nebraska Court of Appeals, in a memorandum opinion filed on December 18, 1996, in case No. A-96-255, reversed the conviction for obstructing a peace officer and otherwise affirmed. We granted Yeutter's petition for further review to determine just one question: whether he was entitled to a jury instruction on self-defense.

But before we addressed that question, we described Yeutter's arrest for obstructing a peace officer as "an illegal arrest,"[27] noting that at the time the officer attempted to place him under arrest for obstruction, Yeutter had not "used or threatened to use violence or force or physically interfered with the officer."[28] We then went on to state that "the mere verbal refusal to provide information to an officer does not constitute an obstacle to the enforcement of the penal laws as contemplated by § 28-906. There must be some sort of physical act in order for a violation of this statute to occur."[29] These propositions of law, while dicta, have been cited by both the Nebraska Court of Appeals and the U.S. District Court for the District of Nebraska.[30] We therefore conclude it is necessary to revisit our statements in *Yeutter* to ensure they comport with the statutory language of § 28-906(1).

---

[27] *Id.* at 861, 566 N.W.2d at 391.

[28] *Id.*

[29] *Id.* at 862, 566 N.W.2d at 391.

[30] See, *Deezia v. City of Lincoln*, 350 F. Supp. 3d 868 (D. Neb. 2018); *State v. Ellingson*, 13 Neb. App. 931, 703 N.W.2d 273 (2005); *State v. Owen*, 7 Neb. App. 153, 580 N.W.2d 566 (1998).

The plain language of § 28-906(1) makes it a crime not just to *use* violence, force, physical interference, or obstacle, but also to *threaten* to do so. Consequently, while *Yeutter* correctly observed that "the mere verbal refusal to provide information to an officer does not constitute an obstacle to the enforcement of the penal laws as contemplated by § 28-906,"[31] our opinion was imprecise when it went on to state that "some sort of physical act"[32] is always required. Because threats can be expressed verbally as well as through gestures and physical acts,[33] our language in *Yeutter* was too restrictive, and it failed to give effect to all of the statutory language the Legislature included in § 28-906(1).

[17] We now clarify that the proper inquiry under § 28-906(1) is not whether a defendant has engaged in "some sort of physical act," but, rather, whether a defendant's conduct, however expressed, used or threatened to use either violence, force, physical interference, or obstacle to intentionally obstruct, impair, or hinder a peace officer or judge who was acting to either enforce the penal law or preserve the peace under color of his or her official authority.

### (ii) Sufficient Evidence of
### Proscribed Conduct

Ferrin argues the evidence at trial was insufficient to show he used or threatened to use physical interference or obstruction. He describes his conduct as "merely refus[ing] to come back and talk to the officers"[34] when requested to do so, and he equates such conduct with "the mere verbal refusal to provide information to an officer," which we stated

---

[31] *Yeutter, supra* note 25, 252 Neb. at 862, 566 N.W.2d at 391.

[32] *Id*.

[33] See *Owen, supra* note 30 (holding no clear error in jury instruction stating "obstacle" under § 28-906(1) could be either verbal or physical).

[34] Brief for appellant at 19.

in *Yeutter* was insufficient to constitute an "obstacle" under § 28-906.

The State argues *Yeutter* is inapplicable because Ferrin's conduct involved more than just a mere verbal refusal to provide information. The State generally describes Ferrin's conduct as a series of defiant refusals to exit his vehicle that presented an obstacle to the officers' investigation under § 28-906(1).

[18,19] It is well settled that officers making a traffic stop may order the driver and passengers to get out of the vehicle pending completion of the stop.[35] Here, when officers ordered Ferrin to get out of the truck, he repeatedly refused to comply and instead defiantly remained inside the truck. This conduct did not involve using violence or force. However, a reasonable jury could find that evidence that a defendant repeatedly refused to comply with police orders to exit a vehicle during a traffic stop is sufficient to show the use of either "physical interference" or "obstacle" under § 28-906(1).

The terms "interference" and "obstacle" have similar meanings. Used in its common and ordinary sense, the word "interference" means "[t]he action or fact of interfering or intermeddling (*with* a person, etc., or *in* some action)."[36] Similarly, "obstacle" means "[s]omething that stands in the way or that obstructs progress (*literal* and *figurative*); a hindrance, impediment, or obstruction."[37] Given the commonly understood meaning of these terms, a reasonable fact finder could conclude that Ferrin's conduct in repeatedly refusing to comply with police orders to exit his truck during a traffic stop

---

[35] See *Maryland v. Wilson*, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997).

[36] "Interference," Oxford English Dictionary Online, http://www.oed.com/view/Entry/97762 (last visited Apr. 30, 2020).

[37] "Obstacle," Oxford English Dictionary Online, http://www.oed.com/view/Entry/129940 (last visited Apr. 30, 2020).

amounted to using either "physical interference, or obstacle" under § 28-906(1). And although we are mindful that cases from other jurisdictions apply different statutory language, this holding is in accord with decisions from other state and federal courts which hold that refusal to comply with an officer's requests to exit the vehicle during a traffic stop can support an arrest or conviction for obstruction.[38]

Here, the evidence showed the traffic stop was part of an active police investigation of a reported domestic dispute involving possible domestic violence and sexual assault crimes. As part of that investigation, Ferrin was repeatedly asked to step out of his truck so officers could question him, and he repeatedly refused to comply with those requests, even after being told the nature of the investigation and being advised that he could be charged with a crime if he did not comply. Viewed in the light most favorable to the prosecution, this evidence was sufficient for a rational trier of fact to find that Ferrin used "physical interference, or obstacle" to intentionally obstruct, impair, or hinder the officers in their investigation.

---

[38] See, e.g., *Skube v. Koester*, 120 F. Supp. 3d 825 (C.D. Ill. 2015) (prolonged refusal to comply with police orders to exit vehicle can constitute crime of obstruction); *Taylor v. State*, 326 Ga. App. 27, 755 S.E.2d 839 (2014) (evidence sufficient to prove obstruction when, among other things, defendant refused police orders to exit truck during investigation and instead locked door); *State v. Orr*, 157 Idaho 206, 335 P.3d 51 (Idaho App. 2014) (evidence sufficient to support conviction for obstruction where suspect refused police requests to exit vehicle); *People v. Synnott*, 349 Ill. App. 3d 223, 811 N.E.2d 236, 284 Ill. Dec. 941 (2004) (defendant knowingly obstructed police investigation by repeatedly refusing orders to exit vehicle); *Wilson v. Village of Los Lunas*, 572 F. Appx. 635 (10th Cir. 2014) (refusing officer's requests to exit vehicle during traffic stop provided probable cause to arrest for obstructing officer); *United States v. Thomas*, No. 97-4827, 1998 WL 852951 (4th Cir. Dec. 10, 1998) (unpublished disposition listed in table of "Decisions Without Published Opinions" at 166 F.3d 336 (4th Cir. 1998)) (refusing orders to exit vehicle constituted resisting, delaying, or obstructing officer).

Finding sufficient evidence to support the jury's verdict, we reject Ferrin's third assignment of error.

## V. CONCLUSION

For the foregoing reasons, the district court correctly affirmed the judgment of the county court, and we likewise affirm the judgment of the district court.

Affirmed.