Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/30/2020 08:08 AM CDT

State of Nebraska, appellee,
v. Nicole Cervantes,
appellant.

___ N.W.2d ___

Filed August 7, 2020.    No. S-19-1169.

1. **Trial: Convictions: Appeal and Error.** An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction.
2. **Evidence: Appeal and Error.** An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition.
3. **Trial: Convictions: Evidence.** In connection with a conviction in a bench trial, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Appeal from the District Court for Dawson County: James E. Doyle IV, Judge. Affirmed.

Claude E. Berreckman, Jr., and Claire K. Bazata, of Berreckman, Davis & Bazata, P.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE

Law enforcement officers returning property to the appellant, Nicole Cervantes, approached her home and were greeted by her husband, Casey Cervantes (Casey), against whom Cervantes had a protection order. Upon hearing the officers, Cervantes fled through a window because she was "scared [she] was going to get in trouble." Law enforcement pursued Cervantes and found her about a block away. Following a bench trial in the district court for Dawson County, Cervantes was convicted of obstructing a peace officer. Cervantes appeals and claims that the evidence was insufficient to support her conviction. We affirm.

## II. STATEMENT OF FACTS

Following an incident on September 26, 2018, at Cervantes' home in Cozad, Nebraska, the State charged her with aiding and abetting the violation of a protection order, a Class IV felony in violation of Neb. Rev. Stat. § 42-924 (Reissue 2016), and with obstructing a peace officer, a Class I misdemeanor in violation of Neb. Rev. Stat. § 28-906(1) (Reissue 2016). A bench trial was held on June 4, 2019.

At trial, Sgt. John Peden and Officer Garrett McArdle of the Cozad Police Department testified that they were on duty when they arrived at Cervantes' home in Cozad to return a backpack they had collected during a prior unrelated arrest. Peden knew that the residence was the home of Cervantes and intended to return the backpack to her. Both officers were dressed in uniform and displayed their badges.

McArdle testified that when they approached the entrance, the main door was open and the officers could see through the screen door. The officers knocked, and Casey answered the door, holding a tape measure in his hands. Peden observed Cervantes' daughter and another woman at the home.

The officers knew that Cervantes had an active protection order against Casey which prohibited contact between Casey

and Cervantes, and upon seeing Casey in the home, Peden believed that Casey was violating the order. He did not know whether Cervantes was in the home. Peden briefly observed an unknown person exiting the living room toward the south side of the home. He heard a door slam in the direction that this person had fled. The three people Peden had originally observed at the home were still visible when he heard the door slam, which led him to believe there had been a fourth person in the home. McArdle testified that he did not observe anyone else in the home other than Cervantes' daughter and that he did not hear sounds or noises that suggested somebody else was present. McArdle testified that he confirmed through dispatch that a protection order remained active against Casey, and the officers then handcuffed Casey.

Cervantes' daughter told McArdle no one else was in the home and gave consent for him to search the home. As McArdle took a few steps into the home, someone driving a vehicle pulled up and reported that a woman had jumped out the window of the home and run south. McArdle ran out of the house and found Cervantes walking in an alley about a block away. McArdle handcuffed her and took her back to the residence. McArdle acknowledged that Cervantes stopped and cooperated when apprehended, aside from "pull[ing] away a little bit" when she was handcuffed. Cervantes answered his questions and did not take action to prevent McArdle and Peden from arresting Casey.

McArdle spoke with Cervantes, and she admitted that she had been in the home when Casey greeted the officers at the door. Both officers testified that Cervantes admitted being in the home and leaving to avoid getting in trouble. On cross-examination, Peden acknowledged that Cervantes told officers that she had asked Casey to leave the home. Peden indicated that he did not believe her; he did not observe anything to indicate that Casey was not welcome at the home or that anyone there was trying to remove him. Peden was not aware that

Cervantes had a prior arrest for aiding and abetting Casey's prior violation of a protection order.

Cervantes testified in her own behalf. She stated that Casey is her husband and that she obtained the protection order due to his actions resulting from a mental health issue. Cervantes initially sought the protection order because Casey would not take medication for his mental health issue and was becoming violent. The couple had separated a short time before she got the protection order and had not since resumed living together. She moved from her previous home to get away from him. However, Cervantes testified that she understood "there was a 30-day restraining order," but that she later learned that it was for 1 year.

Cervantes testified that she previously pled guilty to aiding and abetting the violation of the same protection order. With respect to the prior incident, according to Cervantes, Casey entered her car without permission and law enforcement pulled her over and arrested her.

On the day of the incident leading to the charges filed in this case, Cervantes denied inviting or allowing Casey into the home. She testified that she had been sleeping in her bedroom when he entered. She stated that she "told him to leave my house or I was going to call the cops, and he said he had my phone and nobody was going to call them." According to Cervantes, Casey was in the home for a half hour during which Cervantes repeatedly told him to leave.

Cervantes admitted that when she heard law enforcement at her front door on September 26, 2018, she left the home. She was surprised that Casey would answer the front door and talk to police officers. Cervantes fled from the house through the bathroom window because she was scared that she would "get in trouble for something I didn't do" and would be arrested again. Cervantes acknowledged on cross-examination that the bathroom in the home was being remodeled that day and that Casey, who is a carpenter, answered the door with a tape measure in his hand.

The district court acquitted Cervantes of the felony charge of aiding and abetting a violation of a protection order. However, with regard to the charge for obstructing a police officer, the court found Cervantes guilty beyond a reasonable doubt. The court stated that fleeing law enforcement was obstruction of a peace officer under the law and that "the more logical, rational, and careful thing" for Cervantes to have done would have been to call out to the police officers and ask for their help once they were in the home. The court said that Cervantes knew the officers were there, but instead of asking them for help, she "fled the scene, and [was] found a block away."

On December 4, 2019, the district court sentenced Cervantes to a term of 6 days' imprisonment, with credit for 6 days already served, and a term of probation for a period of 12 months.

Cervantes appeals.

## III. ASSIGNMENT OF ERROR

On appeal, Cervantes claims, restated, that the district court erred because it convicted her without sufficient evidence that she obstructed a peace officer.

## IV. STANDARDS OF REVIEW

[1-3] An appellate court will sustain a conviction in a bench trial of a criminal case if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Montoya*, 304 Neb. 96, 933 N.W.2d 558 (2019). In making this determination, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, evaluate explanations, or reweigh the evidence presented, which are within a fact finder's province for disposition. *Id*. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

## V. ANALYSIS

### 1. Applicable Law

We begin by setting forth the applicable statutes and legal principles relevant to our analysis. The obstructing a peace officer statute, § 28-906, provides in relevant part:

> (1) A person commits the offense of obstructing a peace officer, when, by using or threatening to use violence, force, physical interference, or obstacle, he or she intentionally obstructs, impairs, or hinders (a) the enforcement of the penal law or the preservation of the peace by a peace officer or judge acting under color of his or her official authority or (b) a police animal assisting a peace officer acting pursuant to the peace officer's official authority.
>
>    . . . .
>
> (3) Obstructing a peace officer is a Class I misdemeanor.

To show a violation of § 28-906(1), the State must prove that (1) the defendant intentionally obstructed, impaired, or hindered either a peace officer, a judge, or a police animal assisting a peace officer; (2) at the time the defendant did so, the peace officer or judge was acting under color of his or her official authority to enforce the penal law or preserve the peace; and (3) the defendant did so by using or threatening to use either violence, force, physical interference, or obstacle. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020).

We recently clarified the law under § 28-906(1) in *State v. Ferrin*, where we stated that

> the proper inquiry under § 28-906(1) is not whether a defendant has engaged in "some sort of physical act," but, rather, whether a defendant's conduct, however expressed, used or threatened to use either violence, force, physical interference, or obstacle to intentionally obstruct, impair, or hinder a peace officer or judge who was acting to either enforce the penal law or preserve the peace under color of his or her official authority.

305 Neb. at 776, 942 N.W.2d at 415. For purposes of
§ 28-906(1), we defined the words "interference" and "obsta-
cle" as follows:

> Used in its common and ordinary sense, the word "inter-
> ference" means "[t]he action or fact of interfering or
> intermeddling (*with* a person, etc., or *in* some action)."
> Similarly, "obstacle" means "[s]omething that stands in
> the way or that obstructs progress (*literal* and *figurative*);
> a hindrance, impediment, or obstruction."

*State v. Ferrin*, 305 Neb. at 777, 942 N.W.2d at 415.

For completeness, we note that the district court did not
have the benefit of our clarifications in *State v. Ferrin*, but the
district court's reliance on "flight" and other factors as bases
for conviction in this case is not incorrect. See *In re Interest of
Richter*, 226 Neb. 874, 415 N.W.2d 476 (1987).

### 2. Obstruction of a Peace Officer: Sufficiency of Evidence

Cervantes claims that the evidence is insufficient to support
her conviction for obstruction of a peace officer. We conclude
that Cervantes' assignment of error is without merit.

### (a) Cervantes' Intentional Acts

The first inquiry in this case under § 28-906 as explained
in *State v. Ferrin, supra*, includes an examination of whether
the defendant's acts which involved peace officers were inten-
tional. There is no dispute that peace officers were involved.

With respect to intentionality, Cervantes told police officers
that she believed she would be "in trouble" because of Casey's
presence in the home contrary to a protection order. There was
evidence that Casey had previously violated the protection
order. Cervantes testified that she fled out of the bathroom
window when she heard law enforcement at the home to avoid
speaking with them. Cervantes did not want to talk to officers,
but she knew that officers wanted to talk to her. There was
sufficient evidence at trial to conclude Cervantes' acts were

done intentionally to obstruct, impair, or hinder Peden and McArdle in their enforcement efforts.

### (b) The Police Officers Were Enforcing
### Penal Law at the Time of the Incident

The second inquiry in this case under § 28-906, as explained in *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020), includes an examination of whether the peace officers were enforcing a penal law.

Cervantes contends that the police officers were not enforcing the penal law or preserving the peace at the time of the incident. We do not agree. The evidence shows that Casey answered the door at Cervantes' house and that Peden testified he knew that Cervantes had a no-contact protection order against Casey that was in force, violation of which is against the penal law. Section 42-924(4) provides that a knowing violation of a protection order is "a Class I misdemeanor, except that any person convicted of violating such order who has a prior conviction for violating a protection order shall be guilty of a Class IV felony." Casey was subject to a prior violation. The continued presence of law enforcement at Cervantes' home was in service of the enforcement and investigation of a penal law, § 42-924(4). There was sufficient evidence supporting the district court's conclusion that the police officers were enforcing the penal law at the time of the incident.

### (c) Cervantes' Acts Were Used to Obstruct
### or Impair Enforcement of a Penal Law

The third inquiry under § 28-906, as explained in *State v. Ferrin, supra*, includes an examination of whether Cervantes' acts were used to obstruct or impair enforcement of a penal law.

Cervantes contends that her flight from law enforcement, standing alone, was insufficient to satisfy the element of obstructing or impairing the work of a peace officer. We do not agree. As noted above, running away to avoid a peace officer's

acting to enforce the penal law can result in an interference or obstacle to the progress of that enforcement. See *id.*

Under the facts presented at trial, Cervantes' flight out the window physically obstructed and impaired law enforcement. The evidence shows that upon observing Casey, Peden and McArdle remained at Cervantes' residence so they could investigate the violation of a protection order. Cervantes was ultimately apprehended with the aid of a passer-by who reported that a woman had jumped out of a window and run away from the home. Nevertheless, the officers' questioning of Cervantes in connection with their enforcement of a penal law was hindered or impeded by Cervantes' intentional acts.

## VI. CONCLUSION

The evidence received at trial, taken in the light most favorable to the State, was sufficient to find that Cervantes' intentional acts impaired peace officers' enforcing a penal law. Accordingly, we affirm the judgment and sentence of the district court.

AFFIRMED.