IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. WEEKS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JORI S. WEEKS, APPELLANT.

Filed August 10, 2021.    No. A-20-918.

Appeal from the District Court for Lancaster County: DARLA S. IDEUS, Judge, on appeal thereto from the County Court for Lancaster County: TIMOTHY C. PHILLIPS, Judge. Judgment of District Court affirmed.

Joe Nigro, Lancaster County Public Defender, and James G. Sieben for appellant.

Robert E. Caples, Assistant Lincoln City Attorney, for appellee.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

After a bench trial in the county court for Lancaster County, Jori S. Weeks was convicted of four offenses: driving under the influence of alcohol, disturbing the peace by fighting, refusing a preliminary breath test, and disturbing the peace, each in violation of the Lincoln Municipal Code. Weeks appealed only his conviction for driving under the influence to the district court, which affirmed. Weeks now appeals to this court. On appeal, Weeks alleges that the district court erred in affirming his conviction for driving under the influence because there was insufficient evidence presented at trial. For the reasons set forth herein, we affirm the decision of the district court which affirmed Weeks' county court conviction.

STATEMENT OF FACTS

On December 30, 2019, the State filed a complaint in the county court charging Weeks with four counts: "DUI/.08 1st Offense," in violation of Lincoln Municipal Code § 10.16.030; disturbing the peace by fighting, in violation of Lincoln Municipal Code § 9.20.050; refusing a preliminary breath test, in violation of Lincoln Municipal Code § 10.16.040; and disturbing the peace, in violation of Lincoln Municipal Code § 9.20.050. A bench trial was held on June 17, 2020. Because Weeks' appeal only alleges error with respect to his ultimate conviction for driving under the influence, our recitation of the facts focuses on this offense.

At trial, Brian Giles, who owns a bar in Lincoln, testified that on December 27, 2019, his bar rented out a party room to a local company for its employee Christmas party. Giles was made aware of a disturbance in the party room during the Christmas party. When he went back to the party room, he saw two people pushing and shoving each other while others tried to break up the altercation. He identified Weeks as one of the people involved in the altercation. Approximately 10 to 15 minutes later, Weeks was told to leave the bar and Giles personally escorted Weeks outside. While being escorted out, Weeks indicated that he planned to retrieve his gun. As a result of Weeks' comment, Giles decided to call 911 and, pursuant to instructions received from the dispatcher, locked the doors of his bar. From inside the bar, he continued to watch Weeks in the parking lot after he left Weeks outside.

According to Giles, Weeks walked toward his pickup truck which was parked in the back of the bar's parking lot. Weeks entered the "back end" and then got into the "front end." Giles observed Weeks pull out of the parking stall that the truck had been parked in. He then observed Weeks drive down and across the street into a car dealership's parking lot where the vehicle stayed for a few minutes. Giles remained on the phone with dispatch until officers arrived and provided updates regarding Weeks' actions. After watching Weeks for a few minutes, he saw Weeks' truck return to the parking lot in front of the bar. Weeks drove around the parking lot briefly, then parked in the same area as he had parked before. Shortly after Weeks parked his truck multiple police officers arrived.

Law enforcement officers received a message from dispatch at 9:25 p.m. Two of the responding officers testified at trial. Officer Alessandre Bunde arrived there at 9:32 p.m. Officer Kyle Russell arrived shortly thereafter. While in route to the scene, dispatch provided information to them that an intoxicated person had been at the bar and then left. They were later informed that the same person was driving around in a pickup truck and had returned to the bar. After Bunde identified Weeks standing by a red pickup truck which matched the description provided by dispatch, Weeks was almost immediately handcuffed, his person was searched, and he was placed into Russell's cruiser. Shortly after being placed into the cruiser, Weeks, unprompted by any question, stated "[a]m I drunk? Yes." However, Weeks also told Russell that he had not driven after he became intoxicated and had ordered an Uber to pick him up. Russell observed that Weeks had slurred speech and bloodshot eyes. Russell also detected the odor of alcohol.

At trial, both Bunde and Russell conceded that they did not personally see Weeks inside his truck nor did they see Weeks drive the truck. However, based on what they had been told by dispatch, they believed that Weeks had, at least briefly, driven the truck shortly after leaving the bar. Russell also admitted that his report did not note any additional evidence, such as the vehicle

being warm, that Weeks had recently been driving. As part of the investigation, officers requested security footage from neighboring businesses, but did not receive any. When Russell searched the pickup truck, he found that the keys had been wedged between the passenger seat and the center console in a manner that appeared to be deliberate.

Weeks called his manager, Travis Laird, and a coworker, Darrell Singleton, to testify on his behalf. Both Laird and Singleton attended the Christmas party. According to Laird, Weeks was escorted out of the bar between 9 and 9:30 p.m. Approximately 5 minutes after Weeks was escorted out of the bar, Laird heard that Weeks had not left from the parking lot of the bar. He testified that he went outside to sit and talk with Weeks and attempted to arrange a ride home for him. In total, Laird estimated that he spent approximately 20 minutes with Weeks; however, he did not check a clock. He testified that he did not see Weeks get in the truck and that the truck was parked in the same spot and in the same way as when Weeks first arrived. On cross-examination, he conceded that Weeks could have driven the pickup while he was inside.

Singleton testified that Weeks was asked to leave the bar during the Christmas party due to an altercation. He went with Weeks outside the bar but he soon went back into the bar for a "couple of minutes" to look for Weeks' phone. As he was going back in the bar, he saw Laird come out. When Singleton came back out, Weeks' truck was parked in the same spot in the bar's parking lot. He did not see Weeks enter, start, or drive the truck while he was outside with him. He offered a ride to Weeks but Weeks declined because he had another ride coming to pick him up. After spending a few more minutes with Weeks, Singleton went back inside the bar. He testified that he was inside the bar for approximately 20 minutes before the police arrived. He testified that the windows in the bar were tinted so it was difficult to see outside. According to Singleton, he spent a total of 35 to 40 minutes with Weeks after Weeks was escorted out of the bar. He saw Weeks' truck in only one parking spot during the course of the evening. Both Laird and Singleton admitted they had drank alcoholic beverages prior to the events which occurred regarding Weeks. However, Laird specifically denied being intoxicated at that point in the evening.

After the trial, the county court entered an order finding that the State met its burden of proof and found Weeks guilty of operating a motor vehicle while under the influence of alcohol, disturbing the peace by fighting, refusing to submit to a preliminary breath test, and disturbing the peace. The court noted that the bar owner had the most compelling testimony and was the only witness that observed Weeks the entire time after he left the bar and prior to his contact with law enforcement. The court further noted that the keys to Weeks' vehicle were inside his vehicle despite the assertion of Weeks' witnesses who stated that Weeks never entered the truck.

Weeks appealed only his conviction for driving under the influence to the district court and requested that a certified copy of Lincoln Municipal Code § 10.16.030 be included in the transcript forwarded to the district court along with the complaint, order, journal entry, and the bill of exceptions from the county court. The district court affirmed Weeks' conviction for driving under the influence, concluding that when viewed and construed most favorably to the State, the properly admitted evidence was sufficient to support the conviction. The district court explained that the trial judge was in the best position to make any credibility determinations of the witnesses.

Weeks now appeals his conviction for driving under the influence to this court.

## ASSIGNMENT OF ERROR

Weeks assigns that the district court erred in finding that there was sufficient evidence presented at trial to support his county court conviction for driving under the influence.

## STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. McGinn*, 303 Neb. 224, 928 N.W.2d 391 (2019). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

A conviction in a bench trial of a criminal case is sustained if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support that conviction. *State v. Thompson*, 278 Neb. 320, 770 N.W.2d 598 (2009). In making this determination, an appellate court does not resolve conflicts in evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented, which are within a fact finder's province for disposition. *Id.*

## ANALYSIS

Weeks was convicted of "DUI/.08 1st Offense" pursuant to § 10.16.030 of the Lincoln Municipal Code. When considering an assignment of error claiming that evidence is insufficient to support a criminal conviction for violation of a municipal ordinance, or that the sentence imposed upon such conviction is excessive, an appellate court will take judicial notice of the ordinance creating the offense and specifying the penalties for violation if it is included in the certified transcript prepared by the clerk of the county court. *State v. Bush*, 254 Neb. 260, 576 N.W.2d 177 (1998). The sufficiency of the evidence to sustain a conviction under municipal ordinances can be considered if the ordinance is in our transcript, which is a matter of the appellant requesting it via a praecipe that the county court clerk include the ordinance in the transcript. *State v. Ruisi*, 9 Neb. App. 435, 616 N.W.2d 19 (2000), *disapproved on other grounds, State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). On appeal from the county court to the district court, Weeks did request a certified copy of Lincoln Municipal Code § 10.16.030 to be included in the transcript in that appeal. Weeks also requested the transcript from the county court to be included in his appeal to this court. However, based upon our review of the record, a copy of Lincoln Municipal Code § 10.16.030 was not included in the county court transcript and, as a result, is not included in our record. Regardless, our transcript does include a copy of the long-form complaint containing the charges against Weeks. We may assume, in the absence of any showing to the contrary, that the material allegations in the complaint reflect the substantive content of the ordinances Weeks was charged with violating. See *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998). Neither party has made any showing which would indicate that the material allegations in the complaint differ from the substantive content contained in the pertinent city ordinances. As

such, we may review Weeks' claim regarding the sufficiency of the evidence to support his conviction pursuant to § 10.16.030, DUI/.08 1st offense.

According to the complaint, the elements of DUI/.08 1st offense which the State must prove beyond a reasonable doubt are (1) that Weeks was operating or in actual physical control of a motor vehicle and (2) that he did so while under the influence of alcoholic liquor with a concentration of eight hundredths of one grams or more by weight of alcohol per 210 liters of breath. While Weeks concedes that he was intoxicated, he argues that there was not sufficient evidence to find that he operated his vehicle while intoxicated. We disagree.

Giles testified that he watched Weeks drive his vehicle from the bar's parking lot. His phone call requesting police to respond was made mere minutes before the arrival of law enforcement at the scene. The police officers located Weeks by his vehicle where he had bloodshot eyes and slurred speech. The police officers located Weeks' keys wedged between the passenger seat and the center console. Russell characterized the placement as "deliberate." Singleton and Laird's testimony gave a timeframe far different than that given by Giles and the police. They also stated they saw no indication that Weeks had driven his pickup. Weeks argues that Giles testimony as to seeing Weeks drive is not credible because of the distance between his location and Weeks' vehicle. In addition, he notes that the police officers did not observe Weeks driving the vehicle. But we do not resolve conflicts in the evidence, pass on the credibility of witnesses or reweigh the evidence. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). Instead, we review the record in the light most favorable to the prosecution. In its findings the county court weighed the credibility of the witnesses and found the State's evidence to be persuasive. Based on our standard of review, we find the evidence offered at trial was sufficient to support Weeks' conviction for driving under the influence.

Weeks also argues that his case places him in the same position as the appellant in *State v. Martin*, 18 Neb. App. 338, 782 N.W.2d 37 (2010), wherein we concluded that there was insufficient evidence to show that Martin was under the influence of alcohol when he operated his vehicle. In *Martin*, a police officer was dispatched to Martin's location based on a report of the presence of suspicious parties. The reporting party made no mention of anyone driving a vehicle or of an accident occurring. When the police officer made contact with Martin at approximately 6 a.m., Martin was intoxicated. Martin told the police officer that he had operated the vehicle and had an accident. The police officer conceded that he never saw Martin drive a vehicle and was unable to determine when the accident happened or when the vehicle was last driven. Ultimately, we determined that there was not sufficient evidence to support Martin's conviction for driving under the influence because there was no indication as to when Martin last operated his vehicle and whether he was under the influence of alcohol at the time he operated the vehicle.

The present case is factually distinguishable from *State v. Martin, supra*. While law enforcement officers did not personally see Weeks operate the vehicle, they responded to a report of someone driving a vehicle while intoxicated within minutes of receiving the phone call. Giles observed Weeks' condition and escorted him out of the bar after Weeks was involved in an altercation. Giles also observed Weeks driving the pickup while he waited for the police to arrive. Upon their arrival, the police officers located Weeks just outside of his vehicle and Weeks admitted he was intoxicated. A later breath test confirmed his admission. Accordingly, here, unlike *Martin*, evidence did exist as to the time frame wherein Weeks operated his vehicle and that he was

intoxicated at that time. Therefore, our holding in *Martin* is inapplicable under the facts of this case and find that the evidence, viewed and construed most favorably to the State, supports Weeks' conviction.

CONCLUSION

For the reasons set forth above, we affirm the district court's order affirming Weeks' conviction for driving under the influence.

AFFIRMED.