IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

RAMOS V. MARAVILLA-ALFARO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JONATHAN F. RAMOS, APPELLEE,

V.

ELIEZER JONATHAN MARAVILLA-ALFARO, APPELLANT.

Filed April 22, 2025.    No. A-24-510.

Appeal from the District Court for Platte County: JASON M. BERGEVIN, Judge. Affirmed.

Jonathan F. Ramos, pro se.

No appearance for appellee.

MOORE, PIRTLE, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Jonathan F. Ramos appeals from the Platte County District Court's order dismissing his petition to obtain a harassment protection order against Eliezer Jonathan Maravilla-Alfaro. For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

In April 2024, Ramos filed a petition and affidavit to obtain a harassment protection order against Maravilla-Alfaro. Ramos alleged that he was deaf and requested an American Sign Language interpreter. In support of his request for a harassment protection order, Ramos alleged three separate incidents wherein Maravilla-Alfaro scratched his car, threw his boots outside in the hallway and damaged his property, and threatened Ramos with a knife.

At the hearing thereon, the evidence established that the parties met in September or October 2023; that Ramos was married to, or was the "mate" of, Maravilla-Alfaro's mother-in-law;

and that the parties and their spouses all resided together in the same home. Ramos alleged that on March 8, he noticed that his car had been moved and that Maravilla-Alfaro's car was parked in its place. Ramos testified that after noticing a scratch running the entire length of his car, he was told by another individual that while Ramos was sleeping, "[Maravilla-Alfaro] took the keys to [Ramos'] car and . . . swapped the car places."

According to Ramos, the second and third incidents occurred in April 2024. Ramos alleged that Maravilla-Alfaro was in Ramos' bedroom and

> he was yelling angrily at me, very aggressive, and grabbed and was gesturing, . . . patting his hand, . . . this is what I need. And so I texted, you know, I was very afraid. And something, again, about something being due, and the delay of payment or something like that. And he was like, no, get out of here, I don't want you, . . . move along, you can't stay. And so again, I texted and said, . . . I'm going to have to call the police, and that's when he grabbed my shoes and damaged my shoes, threw things out of my room, down in the hallway. . . He had damaged my property. . . .

Ramos testified that the third incident occurred later that same evening. Ramos stated that "I was in the bathroom and came out opening the door. And I saw [Maravilla-Alfaro] standing there, ready with a knife, holding it up." Ramos testified that Maravilla-Alfaro had threatened him with a knife or threatened to cut his throat with a knife "repeatedly" in the past. Ramos requested that the court enter a protection order because after Ramos moved out of the home, Maravilla-Alfaro had been following him and had been attempting to figure out where Ramos now lived.

Maravilla-Alfaro testified that he never moved Ramos' car; that he did not have an argument with Ramos regarding rent; that he did not move any of Ramos' property out of his room or damage Ramos' property; and that he did not threaten Ramos with a knife, nor did he have any kind of confrontation with Ramos in the hallway that night. Maravilla-Alfaro acknowledged that a police report existed regarding one of the April 2024 incidents.

On June 10, 2024, the district court dismissed Ramos' petition. Specifically, the court found that it

> had the opportunity to assess the credibility of both parties during the hearing. [Ramos'] allegations are no more credible than [Maravilla-Alfaro's] denials.
>
> The evidence adduced about these incidents does not establish by a preponderance of the evidence that [Maravilla-Alfaro] engaged in a knowing and willful course of conduct directed at [Ramos] which seriously terrified, threatened or intimidated [Ramos] and which served no legitimate purpose. Neb. Rev. Stat. § 28-311.02(2)(a).

Ramos, self-represented, has appealed from the district court's order denying his request for a harassment protection order.

## ASSIGNMENTS OF ERROR

Ramos' assignments of error, renumbered and restated, are that the district court erred in (1) dismissing his petition to obtain a protection order; (2) demonstrating personal bias and

prejudice towards him due to his disability; and (3) disregarding his argument regarding his disability and the applicability of Neb. Rev. Stat. § 28-110 (Reissue 2016).

## STANDARD OF REVIEW

The grant or denial of a protection order is reviewed de novo on the record. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

### DENIAL OF PROTECTION ORDER

Ramos assigns that the district court erred in dismissing his petition and affidavit to obtain a harassment protection order against Maravilla-Alfaro.

Harassment protection orders are governed by Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2024). Section 28-311.09 states, in pertinent part:

(1) Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order as provided in subsection (3) of this section. . . .

(2) The petition for a harassment protection order shall state the events and dates or approximate dates of acts constituting the alleged harassment, including the most recent and most severe incident or incidents.

"Harass" is defined as "engag[ing] in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016). "Course of conduct" is defined as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person." § 28-311.02(2)(b).

Here, the district court found that Ramos failed to meet his burden to prove that Maravilla-Alfaro engaged in a knowing and willful course of conduct directed at Ramos which seriously terrified, threatened or intimidated Ramos and which served no legitimate purpose. We agree.

Ramos testified, as to the first incident of alleged harassment, that he believed Maravilla-Alfaro scratched his car because Maravilla-Alfaro's car was parked where Ramos' car used to be and because Maravilla-Alfaro generally carried a knife. As to the second and third incidents, Ramos testified that Maravilla-Alfaro yelled at him as it related to rent owed, threw his boots into the hallway which damaged them, and later threatened him with a knife and followed him to ascertain his new living arrangements. Maravilla-Alfaro denied all the allegations. Where the evidence is in conflict, we give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Diedra T. v.*

*Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). No other evidence was presented to the district court regarding these alleged incidents other than the testimony of the parties, which stood in stark contrast to each other. Based on our de novo review, while giving weight to the circumstances that the trial judge heard and observed the witnesses and accepted Maravilla-Alfaro's version of the facts over Ramos' version, we find no error in the district court's order denying the harassment protection order. This assignment of error fails.

ALLEGATIONS REGARDING PREJUDICE AND BIAS

Ramos next contends that the district court demonstrated prejudice and personal bias towards him. He argues that "[t]he Judge's labeling of [Ramos] and [his] actions as 'deceitful, underhanded, and fraudulent' [i]ndicates a deep-seated antagonism which would make fair judgment impossible." Brief for appellant at 5.

A trial judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice is shown. *Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002).

Based on our de novo, we find that Ramos' argument is refuted by the record. There is nothing in this record showing that the district court referred to Ramos or his actions as "deceitful, underhanded, [or] fraudulent." Nor does Ramos cite to any facts in this record demonstrating that the court showed any prejudice or personal bias towards him. As a general proposition, it is incumbent upon the appellant to present a record supporting the errors assigned; absent such a record, an appellate court will affirm the lower court's decision regarding those errors. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). This assignment of error fails.

APPLICABILITY OF § 28-110

Ramos' final assignment of error is that the district court erred in disregarding his argument regarding his disability and the applicability of § 28-110. Section 28-110, which is a provision generally applicable to criminal offenses, provides:

> A person in the State of Nebraska has the right to live free from violence, or intimidation by threat of violence, committed against his or her person or the destruction or vandalism of, or intimidation by threat of destruction or vandalism of, his or her property regardless of his or her race, color, religion, ancestry, national origin, gender, sexual orientation, age, or disability.

Although assigned as error, Ramos failed to argue this assigned error in his brief. It is a fundamental rule of appellate practice that an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State v. $18,000*, 311 Neb. 621, 974 N.W.2d 290 (2022). The failure to comply with this rule comes with consequences. *Id*. An argument that does little more than to restate an assignment of error does not support the assignment, and an appellate court will not address it. *Id*. Accordingly, we decline to address this assigned error.

- 4 -

## CONCLUSION

For the reasons stated above, we affirm the order of the district court denying Ramos' request for a harassment protection order.

AFFIRMED.