IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BUESCHER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DALE W. BUESCHER, APPELLANT.

Filed January 5, 2021.    No. A-19-991.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge, on appeal thereto from the County Court for Lancaster County: TIMOTHY C. PHILLIPS, Judge. Judgment of District Court affirmed.

Robert B. Creager and Mona L. Burton, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Yohance L. Christie, Lincoln City Attorney, and Marcee A. Brownlee for appellee.

BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Dale W. Buescher appeals from an order of the Lancaster County District Court affirming his convictions and sentences in the county court for Lancaster County for disturbing the peace, injuring or destroying the property of another, and depositing refuse or filth on the property of another, all in violation of the Lincoln Municipal Code. On appeal to this court, Buescher claims that the evidence was insufficient to support his convictions, that the concurrent 60-day jail sentences imposed were excessive, and that he received ineffective assistance from his trial counsel and first appellate counsel. We affirm.

## II. BACKGROUND

On June 7, 2018, the State filed an amended complaint charging Buescher with count 1, disturbing the peace in violation of Lincoln Municipal Code § 9.20.050; count 2, injuring or destroying property of another in violation of Lincoln Municipal Code § 9.24.100; count 3, loitering and trespass in violation of Lincoln Municipal Code § 9.24.190A; count 4, stealing goods or money less than $500 in violation of Lincoln Municipal Code § 1.24.010; and count 5, depositing refuse or filth on the property of another in violation of Lincoln Municipal Code § 9.24.170. All were alleged to have occurred on April 25, 2018. The county court held a bench trial on November 27. The evidence adduced at trial consisted of witness testimony from Buescher's neighbors Corry Compton and Jessica Compton, two Lincoln police officers, Buescher's live-in girlfriend, and Buescher himself, as well as photographs and a video entered into the record. While we summarize some of the evidence here, further details are included in our analysis as well.

The Comptons had been neighbors to Buescher for 9 years at the time of trial, living next door to the north of Buescher's home. Corry testified that the only prior "difficulty" concerning Buescher occurred "a couple of years" before trial, stemming from branches falling from a tree on the Comptons' property onto Buescher's property. Those branches would then "just randomly show up" in the Comptons' yard. Corry spoke with Buescher about the branches and recounted at trial that Buescher had admitted to throwing the branches over the fence and into the Comptons' yard, although Buescher denied doing so during his own testimony. Following Corry's conversation with Buescher about the branches, the Comptons experienced a number of unexplained incidents, including "broken windows on [their] house" and "a broken front window of [their] car."

In 2017, the Comptons began to notice "a horrid smell on the back of [their] deck." Corry noted the odor smelled "like human urine," while Jessica described it as smelling like "an outhouse" and "feces and urine." The odor was at its worst "after it rained" or when "it was really hot outside." The odor persisted throughout 2017 and into the summer of 2018, and the Comptons reported they had stopped using their deck for the duration because of the smell.

On April 19, 2018, Jessica arrived home at around 10 a.m. Upon her arrival, she noticed "a wet substance just splattered across" the sliding glass door leading out to the deck and the Comptons' backyard. Further investigation revealed the same substance was "up on the lattice" on the south side of the deck facing Buescher's home, "dripping from the roof," and "all over [the] siding" next to the sliding glass door. Jessica described the substance as "a brownish, nasty-smelling, horrid thing" and identified the odor emanating from the substance as "the odor we've smelled for the last year."

After discovering the substance, Jessica called the Lincoln Police Department, and Officer Stacy Pratt was dispatched to the Comptons' home. Jessica led Officer Pratt to the deck, and Officer Pratt immediately noticed the odor that she described as "overwhelming" and smelling "like raw sewage." During her investigation, she observed the railing and "an area [on the deck] where the wood appeared darker" and also "appeared to be saturated with some type of liquid." She additionally noticed "what appeared to be liquid stains that were running down the siding" on that side of the home and "a residue-type film that . . . looked like it had been running down the

glass" of the sliding door to the deck. No further action was taken by Officer Pratt on April 19, 2018.

Shortly after Officer Pratt's visit, the Comptons purchased a surveillance camera. Corry initially placed the camera "in the grill on [the] deck" facing the southwest corner of their house where the odor emanated from. After observing no unusual activity, Corry moved the camera "[u]nderneath the southwest corner of [the] deck" facing south towards Buescher's home. On April 25, 2018, the camera recorded Buescher, outside of his home, pouring liquid from a larger container into a cup and throwing the liquid "over the top of the camera" and hitting the Comptons' house. The same day, Corry observed "more liquid splashed across the [sliding glass] door . . . that wasn't there the days before." He also saw more liquid on "the lattice and the railing and up the corner of [the] house." He noticed the liquid had dried, but described the smell as "very strong" and as though "it had happened just then."

The following day, April 26, 2018, the surveillance camera disappeared from its location underneath the Comptons' deck. Prior to its disappearance, the camera took a series of photographs and the photos were emailed to Corry's email address. The photographs included one of Buescher looking directly at the camera and another of a hand holding a stick near the camera lens after the camera had fallen.

The Comptons called the police to report the disappearance of the camera, and Officer Todd Groves was dispatched to their address the same day. During his investigation of the Comptons' backyard, Officer Groves also noticed "a foul odor similar to . . . animal urine." He also spoke with Buescher concerning the camera and the previous issue the Comptons reported to law enforcement. Officer Groves reported that Buescher denied taking the camera but answered that he "may have thrown some water towards [the Comptons'] property."

Subsequently on May 7, 2018, Officer Pratt returned to speak with Buescher. In response to her questions, Buescher denied throwing any liquid onto the Comptons' home. Officer Pratt then brought up the previously described recording that depicted Buescher throwing a cup of liquid at the Comptons' house. Buescher then told her "that he was simply throwing water at the house." Upon further questioning, he described that he threw "water that was mixed with fertilizer" and then later told Officer Pratt that "he had also thrown some water that was mixed with salt." Buescher also described to her that there had been "a swarm of bees or flies . . . near the Comptons' deck" and he had thrown the liquid at those insects. When Officer Pratt questioned Buescher about the odor on the Comptons' deck, Buescher responded that he "believed that maybe there was a dead animal underneath the deck" or, when Officer Pratt stated her belief that the smell was not of a dead animal, Buescher suggested "that maybe the Comptons' children had been urinating on the deck." Officer Pratt then issued Buescher a citation.

Buescher testified that he threw water at the Comptons' property to scare off some bees and he entered their yard to retrieve a ball on the same day he was captured looking at the camera. He also described that "[t]he gutters in [the southwest] corner [of the Comptons' home] always overflowed" and were "never cleaned . . . out." Buescher's girlfriend testified that she saw dogs on the Comptons' deck regularly and that they urinated and defecated on the deck. Corry acknowledged in his testimony that they had a small dog that did urinate and defecate on the deck.

Following the bench trial, the county court entered an order on January 22, 2019, finding Buescher guilty of disturbing the peace, injuring or destroying property of another, and depositing

refuse or filth on the property of another. The court found Buescher not guilty of the loitering and trespass charge and not guilty of stealing money or goods less than $500.

At the sentencing hearing on May 17, 2019, the county court sentenced Buescher to 60 days in jail for disturbing the peace, 60 days in jail for injuring or destroying property of another, and 60 days in jail for depositing refuse or filth on the property of another. The court ordered Buescher's sentences to run concurrently. The court further ordered Buescher to pay a $150 fine for disturbing the peace and a $250 fine for injuring or destroying the property of another, for a total of $400.

Buescher appealed his convictions to the district court on May 22, 2019. Trial counsel was granted leave to withdraw and new counsel was appointed to handle Buescher's appeal to the district court. In the statement of errors filed with the district court on June 16 by Buescher's new counsel/first appellate counsel, Buescher claimed that there was insufficient evidence for the trial court to have found him guilty of the charges against him, he received ineffective assistance of trial counsel, and the county court imposed an excessive sentence. The district court held a hearing on Buescher's appeal on August 27, and in an order entered on September 19, the district court affirmed the judgment and sentences of the county court. It found the evidence sufficient to support the convictions, that the county court did not abuse its discretion in sentencing Buescher, and that the record was not sufficient to address Buescher's claims of ineffective assistance of trial counsel. Buescher, with different and now second appellate counsel, appeals the order of the district court.

## III. ASSIGNMENTS OF ERROR

Buescher assigns, reordered and restated, that (1) the evidence was insufficient to support his convictions for (a) disturbing the peace, (b) injuring or destroying property of another, and (c) depositing refuse or filth on the property of another; (2) the county court abused its discretion by imposing an excessive sentence; (3) he received ineffective assistance of trial counsel; and (4) he received ineffective assistance from his first appellate counsel.

## IV. STANDARD OF REVIEW

In an appeal of a criminal case from the county court, the district court acts as an intermediate court of appeals, and its review is limited to an examination of the record for error or abuse of discretion. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). Both the district court and a higher appellate court generally review appeals from the county court for error appearing on the record. *Id.* When reviewing a judgment for errors appearing on the record, an appellate court's inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.* When deciding appeals from criminal convictions in county court, we apply the same standards of review that we apply to decide appeals from criminal convictions in district court. *Id.*

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: in reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed

most favorably to the State, is sufficient to support the conviction. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020).

An appellate court reviews criminal sentences for abuse of discretion, which occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020).

## V. ANALYSIS

### 1. INSUFFICIENCY OF EVIDENCE

In each of Buescher's claims regarding the insufficiency of the evidence to support his convictions, he first notes the absence of the applicable ordinances from the Lincoln Municipal Code in the appellate record. Buescher also raises the absence of the ordinances in his claims regarding ineffective assistance of trial counsel and first appellate counsel, which we will address later.

Usually, when a defendant appeals a conviction and sentence under a municipal ordinance, claiming insufficiency of the evidence and excessiveness of the sentence, an appellate court's consideration of the assignments of error requires examination of the specific ordinance involved. *State v. Ruisi*, 9 Neb. App. 435, 616 N.W.2d 19 (2000), *disapproved on other grounds, State v. Decker*, 261 Neb. 382, 622 N.W.2d 903 (2001). See, also, *State v. Buescher*, 240 Neb. 908, 485 N.W.2d 192 (1992) (analysis of assignments of error claiming that evidence is insufficient to support conviction under municipal ordinance and sentence is excessive requires examination of specific ordinance involved). An appellate court will not take judicial notice of a municipal ordinance not in the record, but, instead, assumes that a valid ordinance exists and that the evidence sustains the findings of the trial court. See *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998). However, where the transcript certified by the clerk of the county court contains a copy of the long-form complaint containing the charges against the defendant, an appellate court may assume, in the absence of any showing to the contrary, the material allegations in the complaint reflect the substantive content of the ordinances the defendant was charged with violating. See *id.*

The ordinances used to charge Buescher do not appear in our record. Although we can see that they were requested in the praecipe for transcript filed in the appeal to the district court, that transcript was not made part of our appellate record. Regardless, the record contains the amended complaint setting forth the five charges against Buescher and the maximum sentence attributable to each count. No party to this appeal has made a showing that the material allegations in the amended complaint do not reflect the substantive content of the ordinances that Buescher was charged with violating. Thus, the record sufficiently establishes for our review the bases of Buescher's convictions and the extent to which he may be sentenced.

We now proceed to consider each of Buescher's claims of insufficient evidence, keeping in mind that when reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Ferrin*, 305 Neb. 762, 942 N.W.2d 404 (2020). An appellate court does not resolve conflicts in the evidence, pass on credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id.*

## (a) Disturbing Peace

Buescher was convicted of disturbing the peace pursuant to Lincoln Municipal Code § 9.20.050, the text of which is not included in the appellate record as described above. However, the amended complaint filed by the State charged Buescher with "[i]ntentionally or knowingly disturb[ing] the peace and quiet of any person, family, or neighborhood."

Buescher asserts the evidence was insufficient to support his conviction for disturbing the peace under the Lincoln Municipal Code. He argues the evidence adduced at trial, including the video recording him "splashing a liquid toward the Comptons' home," does not support the conclusion that he "caused the foul odor in April 2018 or committed acts that would have caused the ongoing smell prior to April 2018." Brief for appellant at 16. He notes that although Officer Pratt took a sample of the liquid found on the Comptons' home, she "did not have the substance tested." *Id.* Buescher further argues that other evidence adduced at trial indicated other potential sources of the odor on the Comptons' deck, noting that his live-in girlfriend testified that she had observed the Comptons' dog urinate and defecate on the deck, as well as "other animals on the deck which could presumably attribute to the odor." *Id.* Other evidence also indicated that the Comptons' deck was "in disrepair and not maintained" with "'soft spots' and areas of possible rot." *Id.*

The evidence offered at trial, primarily through the recording entered into the record, indicated that Buescher did in fact throw a liquid substance at the Comptons' home on April 25, 2018. Just under a week earlier, on April 19, Jessica arrived home in the morning and noticed "a wet substance just splattered across" the sliding glass door leading out to the deck. This same substance was also up on the lattice on the south side of the deck facing Buescher's home, and was "dripping from the roof," and "all over [the] siding" next to the sliding glass door. Jessica described the substance as "nasty-smelling" and "horrid," and was the same odor they had been smelling for the past year. Officer Pratt immediately noticed the odor upon responding to Jessica's call to the police that day, and she observed that the wood on the deck was "saturated with some type of liquid" and that there appeared to be liquid stains running down the siding on the side of the home. This incident prompted Corry to place a surveillance camera where "the deck and the house come together on the southwest corner of the house . . . where the concentration of the liquid was." The record also indicates that the odor emanated from this corner. On April 25, the recording depicted Buescher throwing a liquid directly over the camera and landing on the Comptons' home. When Corry arrived home later that day, he described the smell as "very strong," as though "it had happened just then."

Buescher offered conflicting responses to Officer Pratt's questions. He initially denied throwing any liquid on the Comptons' home. But when Officer Pratt confronted him with the recording depicting Buescher throwing a cup of liquid at the Comptons' house, Buescher then said he was simply throwing water at the house. Upon further questioning, he indicated it was water mixed with fertilizer, and then later stated it was water mixed with salt. He suggested he was throwing the liquid at a "swarm of bees or flies" near the Comptons' deck. He also claimed he was in the Comptons' yard to retrieve a ball, and further suggested that the offensive odor was from a dead animal under the Compton's deck. At trial, Buescher additionally recalled his observations of the Comptons' gutters overflowing above the area from where the odor originated. Buescher's

girlfriend also suggested a theory that the offensive odor was the result of the Comptons' own pets urinating and defecating on the deck.

The county court clearly found the Comptons' evidence more persuasive than Buescher's evidence. And it is not the role of an appellate court to reweigh the evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. See *State v. Ferrin, supra.* The question before this court is whether any rational fact finder could find the essential elements of the crime beyond reasonable doubt. See *id.* We also note the State is not required to disprove every hypothesis of nonguilt that is consistent with the circumstantial evidence. See *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012). Viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond reasonable doubt that Buescher intentionally or knowingly disturbed the peace and quiet of the Comptons. The evidence offered at trial was therefore sufficient to support Buescher's conviction for disturbing the peace.

(b) Injuring or Destroying Property of Another

Buescher was convicted of injuring or destroying the property of another pursuant to Lincoln Municipal Code § 9.24.100, the text of which is not included in the appellate record as described above. However, the amended complaint filed by the State charged Buescher with "[i]ntentionally or knowingly, and without proper authority, cut[ting], mark[ing], mar[ring], defac[ing], break[ing], alter[ing] the appearance of, damag[ing], tamper[ing] with, injur[ing], or destroy[ing] any real property or personal property of another."

Buescher asserts the evidence was insufficient to support his conviction for injuring or destroying the property of another under the Lincoln Municipal Code. He points out that "[t]he State's theory of this charge was based upon the same evidence" as the charge for disturbing the peace. Brief for appellant at 17. He argues "there is no evidence to support that the foul odors found on the deck" were due to his actions, as "[t]he liquid that was found on the house was not determined to be the liquid that was evidenced in the video, nor was it tested to determine if it was water, urine, or something else." *Id.* He further points again to the testimony of his girlfriend concerning the Comptons' dog urinating and defecating on the deck as well as the evidence indicating the deck's state of disrepair.

We have already described the evidence supporting the charge for disturbing the peace, which evidence similarly supports this conviction. The recording depicted Buescher throwing a liquid towards the Comptons' home on April 25, 2018, where witness testimony indicated the odor emanated from and where a similar liquid had stained the siding of the Comptons' home less than a week earlier. Corry described that when he arrived home later on April 25, he observed more liquid splashed across the sliding glass door that had not been there the days before. The odor smelled as though "it had happened just then."

With the same considerations in mind, we conclude a rational trier of fact could have found beyond reasonable doubt that Buescher injured the Comptons' home. The evidence offered at trial was therefore sufficient to support Buescher's conviction for injuring or destroying the property of another.

(c) Depositing Refuse or Filth on Property of Another

Buescher was convicted of depositing refuse or filth on the property of another pursuant to Lincoln Municipal Code § 9.24.170, the text of which is not included in the appellate record as described above. However, the amended complaint filed by the State charged Buescher with "[w]illfully, maliciously, or negligently, plac[ing] or throw[ing], or caus[ing] to be placed or thrown, upon the premises of another, any filth, refuse matter, or other thing, to the annoyance of the owner or occupant thereof."

Buescher asserts the evidence was insufficient to support his conviction for depositing refuse or filth on the property of another under the Lincoln Municipal Code. He argues that "the source of the offensive smell, and, specifically, that [his] conduct was the source [of the odor], was not proven beyond a reasonable doubt" by the evidence adduced at trial. Brief for appellant at 19. He points out that law enforcement conducted "no follow-up testing to determine the nature of the substance" and thus the evidence is not sufficient to prove the liquid he was recorded splashing the Comptons' house with was refuse or filth. *Id.*

We first observe the language contained in the amended complaint does not limit the substance at issue to be either filth or refuse, but also includes any "other thing" annoying the owner or occupant. Regardless, we have already described the evidence supporting the charges for disturbing the peace and injuring or destroying property of another, which evidence similarly supports this conviction. Buescher splashed a substance on the Comptons' home which was extremely offensive and resulted in the Comptons being unable to use their deck due to the smell.

With the same considerations that we set forth above, we conclude a rational trier of fact could have found beyond reasonable doubt that Buescher deposited refuse or filth or other thing similarly offensive on the Comptons' property which was so annoying to the Comptons they were unable to use their deck. The evidence offered at trial was therefore sufficient to support Buescher's conviction for depositing refuse or filth on the property of another.

2. EXCESSIVE SENTENCE

Buescher claims that his sentence was excessive. He does not address each sentence separately, but concludes by arguing that the "[c]oncurrent 60-day jail sentences were excessive" and that "[a] fine was the appropriate punishment." Brief for appellant at 21.

As described above, the appellate record did not include the ordinances containing the possible penalties which Buescher may be sentenced to pursuant to each charge. However, the appellate record contains the amended complaint filed by the State describing the possible penalties Buescher could face for each charge if convicted. As neither party has made a showing to the contrary, we assume the material language of the amended complaint reflects the substantive contents of the respective ordinances in the Lincoln Municipal Code. See *State v. Hill*, 254 Neb. 460, 577 N.W.2d 259 (1998).

Buescher was convicted of one count of disturbing the peace under the Lincoln Municipal Code, and the amended complaint provides that a violation may be punished with a fine of $150 up to $500 and a maximum of 3 months in jail. For his conviction for disturbing the peace, the county court sentenced Buescher by oral pronouncement to 60 days in jail and to pay a fine of $150. He was also convicted of one count of injuring or destroying the property of another under the Lincoln Municipal Code, and the amended complaint provides that a violation may be punished

with a fine of $250 up to $500 and a maximum of 6 months in jail. For this charge, the county court sentenced him by oral pronouncement to 60 days in jail and to pay a fine of $250. He was also convicted of depositing refuse or filth on the property of another under the Lincoln Municipal Code, and the amended complaint provides that a violation may be punished with a maximum fine of $500 and a maximum of 6 months in jail. For this count, the county court sentenced Buescher by oral pronouncement to 60 days in jail. The county court ordered that each 60-day sentence run concurrently. The court later entered an order on May 17, 2019, mirroring its oral pronouncement. We note that each of Buescher's fines and sentences are within the ranges listed on the amended complaint.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Williams*, 306 Neb. 261, 945 N.W.2d 124 (2020). In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Buescher was 65 years old at the time of sentencing. His recent prior criminal history includes a conviction for disturbing the peace in 2008, a conviction for trespass upon the property of another in 2012, and a conviction for theft by shoplifting under $200 in 2015. Buescher did not report to the State Probation Office to schedule an appointment to complete his presentence investigation interview following the county court's judgment and order.

At the sentencing hearing on May 17, 2019, Buescher's trial counsel stated that she believed Buescher suffered from a traumatic brain injury, as he is currently on disability. She further noted that no subsequent issues or incidents had been reported since the incidents testified to at trial. She asked the court to consider only imposing fines rather than a jail sentence.

The county court stated it had considered the information in the presentence investigation report and the comments of counsel and Buescher. The court stated that it did not "believe [Buescher] is a candidate for probation," noting that Buescher "didn't report initially" for a presentence investigation interview and "didn't report the second time" the court ordered him to do so. The court found that "anything less than incarceration would depreciate the seriousness of this offense, these three counts, and promote disrespect for the law." The court then sentenced Buescher as set forth previously, noting that it did not "really hear [Buescher] take any accountability for his actions."

Buescher contends on appeal that the county court abused its discretion in imposing a sentence that is "manifestly excessive," as the court "did not articulate the facts or circumstances justifying the significant term of incarceration." Brief for appellant at 21. He argues that "[i]t is an abuse of discretion for the Court to punish [him] for conduct that was not . . . proven." *Id.* Further, he asserts the court also abused its discretion "in not taking the general above-referenced factors [against incarceration] into consideration," referencing Neb. Rev. Stat. § 29-2260(2) and (3)

(Reissue 2016), and that a fine, rather than concurrent 60-day jail sentences, "was the appropriate punishment." Brief for appellant at 21.

As to Buescher's argument that he was being punished for conduct not proven, we have already addressed that the evidence was sufficient to support Buescher's convictions. Further, each sentence imposed by the court was within the ranges provided by the amended complaint and the record indicates that the county court considered appropriate factors in determining Buescher's sentences. Having considered the relevant factors in our review, we conclude that the county court did not abuse its discretion in imposing Buescher's sentences, and that therefore, the district court did not err when it rejected Buescher's argument that his sentences were excessive.

### 3. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Buescher generally assigns as error, as he did on appeal to the district court, that he received ineffective assistance of trial counsel during proceedings at the county court level. We conclude that his ineffective assistance claims related to trial counsel have not been preserved in accordance with *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), which stated, "We now hold that assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." See, also, *State v. Sundquist*, 301 Neb. 1006, 921 N.W.2d 131 (2019) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court). The Nebraska Supreme Court has since declined to consider an assignment of error which only generally claims ineffective assistance of counsel. See, e.g., *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020) (declined to consider assignment of error alleging ineffective assistance of counsel due to failure to comply with specificity required under *Mrza*, which had been released 4 months prior to filing of appellant's brief); *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020) (declined to consider ineffective assistance of counsel claim due to failure to comply with *Mrza*, which had been released 3 months prior to filing of appellant's brief).

On direct appeal from the county court to the district court, nearly 2 months after the release of *State v. Mrza, supra*, Buescher's first appellate counsel filed a statement of errors on June 16, 2019, which alleged, among other errors, that Buescher "received ineffective assistance of trial counsel." The Nebraska Supreme Court has established that when counsel handling the appeal from county court to district court is different than trial counsel, then any claim of ineffective assistance of trial counsel must be raised on appeal to the district court. See *State v. Painter*, 224 Neb. 905, 402 N.W.2d 677 (1987) (defendant's appeal from county court to district court by new counsel failed to make any allegations of ineffective assistance of trial counsel; issue raised for first time in Supreme Court will be disregarded inasmuch as district court cannot commit error in resolving issue never presented and submitted for disposition).

Although Buescher did raise the issue of ineffective assistance of trial counsel in his statement of errors to the district court, it was only a general allegation of ineffective assistance; no specific deficiencies were set forth in the document. The only indicia in our record of the specific deficiencies alleged by Buescher's first appellate counsel are from the appeal hearing held in the district court on August 27, 2019, where Buescher's first appellate counsel stated:

And finally, . . . Mr. Buescher received ineffective assistance of counsel. He is appointed a different counsel on direct appeal. I conceded in our brief that the record is insufficient to really support the ineffectiveness claim that he asserts against his trial counsel, but we just . . . state those so that he does not waive them if he ever wants to argue them in the future. But, essentially, that his trial counsel did not meaningfully explain the trial process to him or spend time with him getting ready for trial. That this trial counsel failed to call witnesses and introduce other evidence and investigate possible witnesses, including other neighbors, some other witnesses that could have testified to the actual true nature of his relationship with the Comptons and other things, including some photographs and other matters and other witnesses that could testify to that back yard situation of the Comptons.

The district court, in its September 19, 2019, order affirming the convictions and sentences of the county court, stated only that Buescher "also alleged he received ineffective assistance of trial counsel. [First appellate counsel] . . . acknowledges that the record before the district court is not sufficient to address these claims." The district court's order made no reference to any specific alleged deficiencies.

With no specific allegations of deficient performance of trial counsel set forth in the statement of errors to the district court, and no specificity later provided in the district court's September 19, 2019, order, a review of any claims of ineffective assistance of trial counsel would be limited to those raised orally at the August 27 appeal hearing, as set forth in the block quote above. However, there is no way to confirm what ineffective assistance claims were actually considered by the district court in reaching its determination that the record was insufficient to address them, and, importantly, there is no authority for an appellate court to conduct a review of such claims based solely upon assertions made by counsel at oral argument. Where a cause has been appealed to a higher appellate court from a district court exercising appellate jurisdiction, only issues properly presented to and passed upon by the district court may be raised on appeal in the absence of plain error. See *State v. Anderson*, 14 Neb. App. 253, 706 N.W.2d 564 (2005). See, also, *State v. Scherbarth*, 24 Neb. App. 897, 900 N.W.2d 213 (2017) (despite failure to file particular statement of error in district court, higher appellate court may still consider errors actually considered by district court).

Unfortunately, we are unable to conduct any type of review under the circumstances presented to us here where there were no specific allegations of trial counsel's deficient performance contained in the statement of errors filed with the district court, nor any details regarding what the district court may have actually considered in its appellate review of Buescher's ineffective assistance of trial counsel claim. Therefore, we will not address this assigned error, and this alleged error is not preserved for postconviction review. See *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014) (claim insufficiently stated is no different than claim not stated at all, and insufficiently stated assignment of error and accompanying argument will not prevent procedural bar accompanying failure to raise all known or apparent claims of ineffective assistance of trial counsel).

### 4. Ineffective Assistance of Appellate Counsel

Buescher assigns as error that he "received ineffective assistance of [his first] appellate counsel." Brief for appellant at 2. Buescher's appeal to this court was his first opportunity to raise an ineffective assistance claim related to his first appellate counsel, as he retained new appellate counsel following the district court's September 19, 2019, order affirming his convictions and sentences. The specificity rule set forth in *Mrza* should likewise apply to these circumstances where a second appellate counsel is making a claim for the first time against a first appellate counsel on appeal to this court from the district court sitting as an appellate court. As a result, we find that Buescher has also failed to allege the deficient performance of his first appellate counsel with the specificity required by *Mrza* in the assignment of errors section of his appellate brief. We therefore will not address this assigned error, and this alleged error is also not preserved for postconviction review. See *State v. Abdullah, supra*.

### VI. CONCLUSION

For the reasons set forth above, we affirm the district court's order affirming Buescher's convictions and sentences.

AFFIRMED.